IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| MIGUEL ANGEL RIVERA ROSARIO | * | |
| | * | CIVIL NO. _____ |
| Plaintiff | * | |
| | * | |
| vs. | * | |
| | | |
| LSREF2 ISLAND HOLDINGS, LTD.INC.;* | | |
| HIBISCUSPR 73 LLC;  INSURANCE | * | TORTS  UNDER ARTICLE  1802 |
| COMPANY X and Y | * | PUERTO RICO CIVIL CODE |
| | * | AND DEMAND FOR JURY TRIAL |
| | | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

TO THE   HONORABLE    COURT:

COMES  NOW plaintiff Miguel Angel Rivera Rosario  through the undersigned counsel and very respectfully states, alleges and prays:

## DEMAND FOR JURY TRIAL

1. Plaintiff demands a jury trial of all issues so triable.

## NATURE OF THE ACTION

2. This is an action whereby compensation is requested for  damages suffered as a result of a malicious prosecution claim against defendants  based on  Puerto Rico's  negligence  statute, Article 1802 of the Puerto Rico Civil Code,

3.   The  damages  suffered in this case, and the cause of the  malicious prosecution claim,   arise and are related to the judicial case LSREF2  Island Holdings, Ltd, Inc. v. Miguel Rivera Rosario, Angel Rivera Meléndez and his wife María Asunción Rosario and their conjugal partnership (last two as guarantors),  Civil

1

No. FCC12010-0449    (0004), Court of First Instance, Superior Part of Loiza in Carolina,   regarding Collection of Monies, Foreclosure of Pledge and Mortgage, Ordinary Procedure.

## JURISDICTION

.    4. The present case is in accordance with 28 U.S. C. Sec. 1332 (a) (2), (c) (1) (diversity jurisdiction). To that effect, defendant LSREF2 Island Holdings, Ltd, Inc. (LSREF2) is incorporated  in the foreign state of Bermuda; HIBISCUSPR 73 LLC (Hibiscus) exists under the laws of the State of Delaware, U.S.A., and plaintiff is  a citizen of Puerto Rico.

## PARTIES

5.   Plaintiff Miguel Rivera Rosario  is of legal age, a businessman, and resident of San Juan, Puerto Rico.

6.    Defendant    LSREF2 is a   company  incorporated in Bermuda  with authorization to do business in Puerto Rico Rico, with offices  in San Juan, Puerto Rico

7. Defendant Hibiscus is a company of limited responsibility existing under the laws of the State of Delaware, U.S.A, with offices in San Juan, Puerto Rico. Hibiscus is not registered with the Puerto Rico State Department.

8. Both defendants LSREF2 and Hibiscus are   "professional buyers of litigations",   dedicated to buying accounts, such as mortgage loans from different financial and banking institutions in Puerto Rico, which are considered losses by the

referenced financial and banking institutions, at extremely low prices, below the market  prices, to then proceed to collect them.

9. Co-defendant Insurance Company X and Y are insurance companies which at all times relevant to this case were Defendants  LSREF2 and Hibiscus' insurers and thus had insurance policies which covered the damages requested in this complaint. At the moment of filing of this  complaint the name  and address of said companies are unknown to plaintiffs.

<u>FACTUAL ALLEGATIONS</u>

10.      Plaintiff Miguel Rivera is the owner  of   the property  located in the Torrecilla  Alta de  Loiza neighborhood,  in the area known as Piñones, with an area, per the current Registry of Property description, of 1,381  square meters, recorded in Page  67  of Volume  221,    Agora of Loiza, property   number 10,489, Property Registry, Section III of Carolina.

11.      In said property there is a cement  structure of two stories, which is completely leased by plaintiff to a Head Start federal program.

12.    On  July 8, 2010, the First Bank of Puerto Rico (First Bank) filed  the case, referred in the previous paragraph 3 of this complaint,  of <u>First Bank of Puerto Rico v. Miguel Angel  Rivera Rosario, Angel Rivera Meléndez and his wife María Asunción Rosario and their conjugal partnership </u>(last two as guarantors), Civil No. FCC12010-0449  (0004),  Court of First Instance, Superior Part of  Rio Grande, regarding Collection  of Monies    Foreclosure  of Pledge    and Mortgage    by Ordinary

Proceeding, concerning plaintiff Miguel Rivera's property referred in the preceding paragraph 10.[1]

13.  Through  such complaint   FirstBank intended to collect  various mortgage notes subscribed by plaintiff Miguel Rivera Rosario  and guaranteed with a mortgage over said  plaintiff's   referred property located in the Torrecilla Alta de Loiza

14  On   June 24, 2011, the parties back then filed in  said judicial case a settlement  agreement,  titled "Joint Motion  Requesting Entry of  Judgment",  which was approved by  the Superior Court and Judgment   was entered pursuant to such agreement on August 1, 2011.

15. On said judicial settlement agreement, in consideration of the defendants' (including here plaintiff) acceptance and acknowledgement of owing Firstbank the principal amount of $2,939,499.12,  plus interest and various charges,  and consent to the judgment,   Firstbank granted the same  the period  of twelve (12) months  to sell the mortgaged property for a  sum of no less than 1.5 million dollars, sum that if obtained would be paid to Firstbank for the totality of the debt. During that period defendants (including here plaintiff)  had to pay   twelve (12) monthly payments to FirstBank for the sum  of $5,300.00 each payment, amount  that would be jointly

---

[1] This foreclosure  took place  in the period of the late  2000s that  came to be known as the Great Recession, where an economic slump began when the U.S. housing market went from boom to bust, and large amounts of mortgage-backed securities and derivatives lost significant value.  (See  Investopedia)

applied to the late charges, interest and indebted principal detailed in the referred agreement.

16.  As part of said settlement agreement, if defendants (including here plaintiff) complied with the monthly payments referred in the preceding paragraph, but were not able to sell the property during the term stated therein, First Bank would grant them a second term of twelve  (12) additional months  for defendants  to sell the property for the stated sum. During  that additional period, defendants would  make another twelve (12)  monthly payments  to FirstBank, in this case each payment  for the sum  of $6,300.00,  amounts  that would also be jointly applied to the late charges, interest and indebted principal.

17.     Pursuant to  such judicial settlement agreement and  the Judgment accordingly entered,  on September 19,  2011, and in accordance to item 5(p)  of said  settlement agreement, plaintiff Miguel Rivera solicited from  FirstBank, in a letter,   permission to segregate and sell for the price of $150,000.00, a portion of land of 626.7606 square meters  of the mortgaged  property. At that portion of land was located   the business known  as "Blue  Iguana", administered by Mr. Nahum Gómez Hidalgo, the person interested in acquiring the property, which sold to the public food  typical to the Piñones area.

18.   On October  20, 2011, FirstBank, through its  legal counsel,  notified a communication  to here plaintiff''s counsel, where Firstbank  agreed and authorized the referred  sale to Mr. Nahúm Gómez,  with the  condition that the sales price of $150,000.00 be paid to Firstbank,  Said sum would then be applied  exclusively, as a result of the  request of here appearing plaintiff Miguel Rivera,  to the monthly

5

payments in favor of Firstbank  referred in the preceding  paragraphs 15 and 16 of this complaint. Said communication also provided a  period of ninety (90) days to fulfill the acts there prescribed,

19. On October 24, 2011,  Mr. Gómez and plaintiff Miguel Rivera, subscribed a  Purchase Option Agreement, in relation to the referred sale, paying Mr. Gomez the sum of $7,500.00 for the option, sum that was paid to Firstbank.    Mr. Gómez paid  the rest  of  the  sales  price  through  monthly  payments.   The  procedure  for payment  was that Mr. Gomez handed  the monthly payments to plaintiff Miguel Rivera, who then,  usually through defendant guarantor,  Angel Rivera Meléndez, paid  the same to Firstbank through a specially designated official of the bank, Mr. George Pappas.  Said monthly payments  commenced on March 1,  2012 and ended on August, 2013.  Firstbank was fully conscious and aware,  and totally accepted, that the referred monthly payments came  from the payments made by Mr. Gómez as part of the sales price for the Blue Iguana property.

20. Mr. Pappas, on behalf of FirstBank, received the $7,500.00 paid by Mr. Gómez corresponding to the  option to purchase the Blue Iguana property, and subsequently accepted all the remaining monthly payments,  made by Mr. Gómez through plaintiff Miguel Rivera Rosario and defendant guarantor Angel Rivera Meléndez,  for approximately one year and ten months,  until the total amount of the sale was completed and approximately two years after the October 11, 2011 letter of authorization.  Firstbank was always aware of the origin of the money, that it came from Mr. Gómez as payment for the referred sale.

21. To this end, Firstbank unequivocally implicitly waived some of the original terms and conditions of the agreement. Firstbank received payments for the entire sale in a time period that far exceeded the referred period of ninety (90) days to fulfill the acts included in the agreement, without raising any objections or claiming compliance with any clause of the agreement. Thus, Firstbank made a modifying novation of the agreement. (See P.D.C.M. Assoc. v. Najul Bez, 174 DPR7 16 (2008)

22. In consequence, the obligations included in the agreement, that is, among others, the grouping of the lot adjoining the property of plaintiff Rivera Rosario, as well as the segregation and release of the property where the Blue Iguana is located, remained to be complied with, but not tied to the referred period of ninety (90) days provided in the authorization letter of October 20, 2011.

23. On February 13, 2012, and as a result of said agreement and authorization by Firstbank, plaintiff Miguel Rivera Rosario- with the referred monthly payments commencing on March 1, 2012- sold to Mr. Nahum Gómez, with Firstbank's knowledge and acceptance, the property where the business Blue Iguana was located,[2] and referred in the preceding paragraph 17, paying to FirstBank, in monthly payments, the total sum of $150,000.00, product of such sale, applying such payments to the monthly payments referred in preceding paragraphs 15 and 16 of this complaint.

24. When Firstbank received the totality of $150,000.00, paid by Mr. Nahúm Gomez Hidalgo, through the referred monthly payments, as the sales price for the

---

[2] Said sale was made through a notarized agreement, pending completion of segregation proceedings to then proceed with the purchase deed.

7

property where the business Blue Iguana was located, Firstbank was obligated to release said  portion of land sold to  Mr. Gómez Hidalgo and occupied by the business called Blue Iguana within the mortgaged property. (See Puerto Rico Civil Code, Article 1044, 31 L.P.R.A. sec. 2994)

25.  On March  28,  2013- while the referred monthly payments of the sales price for the property where the business Blue Iguana was located were still being made in favor of Firstbank-  here defendant LSREF2, in its role as "professional buyer of litigations",   acquired  from  FirstBank the credits and mortgage guarantees included  in  the  foreclosure case, referred   in the preceding paragraph 12,   at extremely low  prices, below the market prices,  and considered  as losses by  such bank,   to then proceed with    their collection. To that effect, defendant LSREF2 formally substituted FirstBank as plaintiff in said case of foreclosure.

26.  The here defendant LSREF2  upon acquiring from  FirstBank the  credits and  mortgage guarantees  and substituting FirstBank in the referred judicial case of foreclosure,   acquired  full  knowledge that   plaintiff Miguel Rivera Rosario, with FirstBank's approval, had sold to Mr. Nahum   Gomez  Hidalgo the piece of land referred  in the preceding paragraph 17, for the sum of $150,000.00,  that the sales price of $150,000.00  had been paid  to Firstbank through the referred monthly payments, which ended on August, 2013, and that Firstbank had waived the compliance of the period of ninety (90) days provided in the authorization letter to fulfill the acts there prescribed, modifying the agreement and authorization letter. Plaintiff Miguel Rivera Rosario also  informed defendant LSREF2  of said sale and

provided said defendant  with copy of the agreements and cancelled checks related to the  sale.

27. When   FirstBank sold to LSREF2 the mortgage  over the property of Miguel Rivera Rosario pursuant to item 5(z) of the settlement  agreement and judgment, LSRF2 became  obliged to comply  with FirstBank's obligation to allow the segregation of the property that Blue Iguana  occupied  and allow the release of such land from the existent mortgage between here plaintiff  Miguel Rivera and FirstBank (now  LSRF2). (See IBEC v. Banco Comercial, 117 D.P.R. 371 (1986)

28. However, on  December 19, 2013, defendant LSREF2 proceeded to file in the foreclosure case,   and in which the same substituted Firstbank as plaintiff, a "Petition for Execution of Judgment", soliciting the sale in public auction of plaintiff' Miguel Rivera's mortgaged property, but,  with malice and without probable cause- as part of a plan with the purpose of obtaining  the most profit possible and in the most  rapid  manner,  not  having  to  spend  time  with  segregation  proceedings- proceeded to improperly include in the execution   the piece of land that plaintiff Miguel Rivera sold  to  Mr. Nahum  Gomez  Hidalgo. (Said petition for execution of judgment at that moment did not proceed.)

29.  Then,  defendant LSREF2  on  March 5, 2015,  proceeded to file in the referred foreclosure case a   "Petition for New Order and  Writ of Execution of Judgment",  soliciting  again  the  sale  in  public  auction  of  plaintiff's  mortgaged property-  auction  that  was  indeed  scheduled-  where,  maliciously  and  without probable cause,  included  again the piece of land that plaintiff sold  to  Mr. Nahum

Gomez Hidalgo,  being  disregarded again  the sale made to the same of said piece of land.

30  On September 10, 2015 plaintiff Miguel Rivera filed a Bankruptcy Petition at the Federal Bankruptcy Court, wherein  the only creditor was defendant LSREF2. On January 14, 2016 Plaintiff Miguel Rivera  Rosario voluntarily dismissed said bankruptcy case.

31. Subsequently,  on February 9, 2016 defendant LSREF2,  proceeded to file in the referred foreclosure case  a  "Petition for Reopening of Proceedings and For New Order and Writ of  Execution of Judgment", soliciting again the sale in public auction of plaintiff's mortgaged property, where,  maliciously and without probable cause, again included  the piece of land that plaintiff sold  to  Mr. Nahum  Gomez Hidalgo.

32. On February 16, 2016 here plaintiff Miguel Rivera filed a motion in the referred foreclosure case opposing the execution of judgment solicited by defendant LSREF2, requesting that Mr. Nahum Gómez be included  in the foreclosure proceedings,  alleging that Mr. Gómez  was the owner of a piece of land in the property that here defendant LSREF2 was trying to execute and sell in public auction.

33.  LSREF2's plan,  that  improperly included  in the execution of judgment the piece of land sold to Mr. Nahum Gómez- for the purpose of obtaining  the most profit possible and in the most rapid manner- also included, maliciously and without probable cause,  LSREF2  opposing  Mr. Gomez's petitions for intervention  in the

foreclosure case and, to, thus, facilitate the inclusion of the land sold to Mr. Gómez .in the execution of judgment.

34. To that effect, on March 1, 2016 defendant LSREF2, maliciously and without probable cause, filed a Reply in opposition to plaintiff Miguel Rivera's referred motion requesting that Mr. Nahum Gómez be included in the foreclosure case.

35. On August 22, 2016 Mr. Nahum Gomez filed a motion in the foreclosure case soliciting permission to intervene in the case, alleging that the same was the owner of a piece of land in the property that defendant was trying to execute and sell in public auction.

36. Defendant LSREF2 on September 6, 2016, maliciously and without probable cause, opposed said motion filed by Mr. Nahum Gómez to intervene in the foreclosure case.

37. At a hearing held on September 8, 2016 at the Puerto Rico Superior Court on the foreclosure case, defendant LSREF2, maliciously and without probable cause, continued to oppose Plaintiff Miquel Rivera Rosario and Mr. Nahum Gomez's petitions to be included in the foreclosure case.

38. At the evidentiary hearings held on November 15, 2016 and December 22, 2016 at the Puerto Rico Superior Court in relation to Plaintiff Miquel Rivera Rosario and Mr. Nahum Gomez's petitions to be included in the foreclosure case, defendant LSREF2, maliciously and without probable cause. continued to oppose said petitions.

39. Said defendant LSREF2 perfectly knew from Mr. Gomez and plaintiff's motions that Mr. Gomez's interest in participating in the foreclosure case, irrespectively if it was through the proceeding of "indispensable party" or "intervention", was to assert his right on part of the property under execution and the grounds supporting its contention, namely, the sale in his favor of that piece of land, thus seeking recognition of his right over the referred piece of land sold to him.

40. Considering that Firstbank had waived the compliance of the referred period of ninety (90) days provided in the authorization letter to fulfill the acts there prescribed, being LSREF2 fully aware of said waiver, the validity of the sale in favor of Mr. Gómez of the Blue Iguana property subsisted, and, therefore, LSREF2 was not in a position to refuse Mr. Gómez's rights over the Blue Iguana property, and could not oppose said petitions for intervention, irrespectively if they were through the proceedings of "indispensable party" or "intervention", in this way also preserving Mr. Gomez's "right to be heard" as part of his right to due process of law.

41. To that effect, on February 6, 2017 the Puerto Rico Superior Court that was handling the foreclosure case, <u>LSREF2 v. Miguel Rivera Rosario, et. als</u>,, Civil No. FCC12010-0449, entered a Resolution, in favor of Mr. Gomez and plaintiff Miguel Rivera, indicating, in synthesis, among other things, the following:

  a) That Mr. Nahúm Gómez had the right to intervene in the foreclosure case;

  b) That Mr. Nahúm Gómez had the right to claim from defendant LSRF2 Island Holdings the liberation of the property called Blue Iguana and the segregation of the related land;

  c) That defendant LSRF2 Island Holdings never had reason nor foundation to oppose said petition and acted with total temerity when obliging

the parties and the court to have to invest money, time and resources to establish said facts;

d) That in consequence, defendant  LSRF2  Island Holdings is ordered to  liberate from plaintiff Miguel Rivera's  mortgage the property called Blue Iguana and that the same permit the segregation of the corresponding land;

e) That for his temerity in the foreclosure case   it is imposed upon defendant LSRF2  Island Holdings the sum of $5,000.00 as attorneys fees and expenses caused to Mr. Nahum Gomez Hidalgo.

42. The defendant LSREF2 appealed said Resolution to the Puerto Rico Appeals Court, which on February 28, 2018 entered   judgment and revoked the same.

43. .  However, Mr. Nahum Gomez and plaintiff Miguel Rivera   filed a petition for certiorari in relation to the  the Appeals Court decision, in different cases that were consolidated, to the Puerto Rico Supreme Court, which on May 25, 2018 issued the certiorari and on December 4, 2019   entered Judgment, which is firm and final, in the cases of <u>LSREF2 v. Miguel Rivera Rosario, et. als, v. Nahum Gómez Hidalgo,</u> CC2018-353 consolidated with   CC2018-374,   indicating,  among  other  things, resolving the case in favor of Mr. Gómez and Plaintiff Miguel Rivera, the following:

a)  Mr. Gómez Hidalgo has the right to intervene in the foreclosure process here in dispute;

b)LSREF occupies the same position as Firstbank in relation to mortgage debtors. So LSREF2 is placed in the same Position as FirstBank, with the same rights, but also with the same duties and obligations;

c)The segregation and release of the property where the Blue Iguana is located, in accordance with the applicable permission requirements, subsists; LSREF2 can not deny   Mr. Gomez Hidalgo's right over the Blue Iguana;

 (d) On the basis of the foregoing, it is agreed with the primary forum that LSREF2 did not have a valid basis for opposing Mr. Gomez Hidalgo's request for intervention and that his conduct was reckless in forcing Gomez  to invest time,

money and resources to assert his right.

(The preceding  subject-matters[3], sub-paragraphs  (a) to (d), included,  are _res judicata_, or,  at its very least, a collateral estoppel for reason of judgment. (Presidential Financial Corp. of Florida v. Transcaribe Freight Corp.  2012 TSPR 122)

e) The Supreme Court  therefore confirms the $5,000.00 concession granted by the Court of First Instance to Mr. Gomez Hidalgo as fees and expenses in the case.

(f) The Judgment  issued by the Court of Appeals on 28 September 2019 is revoked on the grounds set out above and the case is returned to the Court of First instance for continuation of proceedings  as resolved here.

44.. This determination of the Puerto Rico Supreme Court-  of lack of valid basis by LSREF2  to oppose Mr. Gómez's  request for intervention  and in forcing Gómez  to invest time, money and resources to assert his right- also applies to plaintiff  Miguel Rivera.  (In this respect the Resolution of the Superior Court mentions "obliging the "parties" and the court to have to invest money, time and resources to establish said facts.)

45.   This determination of the Puerto Rico Supreme Court, referred in the preceding paragraph-, which  is _res judicata,_ or, at its very least, a collateral estoppel for reason of judgment-  sustains   and proves, as a matter of evidence,   that LSREF2's  conduct- including in the motions for execution of judgment  the  piece of land  that  plaintiff  Miguel Rivera sold   to   Mr. Nahum   Gomez Hidalgo, and the opposition  to  Mr. Gomez's  intervention  in the foreclosure- were   malicious and without probable cause,   forcing  plaintiff Miguel Rivera,  to also  invest considerable

---

[3]  Other subject-matters included in said Judgment and in the present complaint, including paragraphs19-22 of this complaint,   related and/or applicable  to the present malicious prosecution claim- are _res judicata_, or, at its very least, a collateral estoppel for reason of judgment.

time, money and resources to assert the validity of the purchase agreement here in controversy.

46. On March 6, 2020, and notified on March 19, 2020, the Supreme Court entered a Resolution denying LSREF2's second motion for reconsideration in relation to the Judgment referred in the preceding paragraph 43, and on March 11, 2020 the corresponding Mandate was issued and sent by the Puerto Rico Supreme Court to the corresponding Superior Court.

47. "A malicious prosecution claim under Puerto Rico law has four elements: (1) the defendant instituted a criminal [or civil] action against the plaintiff; (2) the action was terminated in favor of the plaintiff; (3) the defendant acted with malice and without probable cause; and (4) the plaintiff suffered damages." Gonzalez-Rucci v. U.S. I.N.S., 539 F.3d 66, 69 (1st Cir. 2008) (citation omitted). See also MVM Inc. v. Rodriguez, 568 F.Supp.2d 158, 179 (D.P.R. July 28, 2008) Civil No. 17-1918 (ADC) These four elements for a malicious prosecution claim exist in the present case case.

48. The Puerto Rico Civil Code provides that he who by action or omission causes injury to another person, intervening fault or negligence, is obliged to repair the injury caused. (Article 1802 Civil Code, 31 L.P.R.A. sec 5141)

49. Defendant LSREF2, as described in this complaint, acted with malice and without probable cause, causing Plaintiff Miguel Rivera, as owner and then seller of the property in controversy, damages and severe suffering and mental anguish, when said defendant included in the execution of judgment the piece of

land that plaintiff sold  to  Mr. Nahum  Gomez, being  disregarded  the sale made to the same of said piece of land.

50. Also, Defendant LSREF2,   as described in this complaint, acted with malice and  without probable cause,  causing Plaintiff Miguel Rivera, as owner and then seller of the property in controversy,  additional  damages  and severe suffering and  mental  anguish,  when  said  defendant   opposed  Mr.  Gomez's   request  for intervention  without a having valid basis for said opposition, forcing the parties  to invest time money and resources to assert Mr. Gomez's  right.

51 . To that effect, LSREF2, according to Article 1802 of the Puerto Rico Civil Code, is responsible for the damages  suffered by plaintiff Miguel Rivera,  as a direct result of said defendant's malicious and without probable cause  actions against the same.

52. Plaintiff  Miguel  Rivera  was  also   constantly  preoccupied  and  fearful  of losing his only income and his property as he could not  obtain a refinancing  to pay off the mortgage debt since while the controversy related to the referenced sale in favor of  Mr. Nahum Gómez and the  corresponding  segregation existed,  the banks refused to give any refinancing.

53. In addition Plaintiff Miguel Rivera, as a result of the motion for execution of judgment filed on  March 5, 2012  by defendant LSREF2, which included  in the same  the piece of land that plaintiff sold  to  Mr. Nahum  Gomez,  was forced to file a bankruptcy proceeding,  aggravating Mr. Rivera's mental anguish,  diminishing even more his opportunities to obtain a refinancing to pay the mortgage debt.

54. Also, here appearing plaintiff feared that while there was a controversy regarding the referenced sale and segregation, they would be subject to a claim on the part of the third party, Mr. Nahum Gomez, to whom Plaintiff Miguel Rivera sold the piece of land in controversy.

55. Plaintiff Miguel Rivera has suffered emotional damages, grave depression and mistrust, stress, anxiety, inconveniences, damages to his reputation, humiliation and has suffered lack of sleep all due to the aforementioned malicious, without probable cause, actions of defendant. LSREF2.

56. .As a direct and immediate result of the malicious, without probable cause actions of defendant. here referred to, the interest of plaintiff Miguel Rivera in his work and prosperity has been affected, preventing him to be economically rehabilitated. Defendant's actions have affected the search for happiness of plaintiff.

57. Defendants knew or reasonably should have known or foreseen that its malicious and without probable cause actions would cause damages to plaintiff which are figured in the sum of $5,500,000.00 for Miguel Rivera Rosario,

58. While the appeal to the Puerto Rico Supreme Court, referred in paragraph 43 of this complaint, was pending, on October 23, 2018 LSREF2 transferred to Hibiscus, according to information provided by the same, the credits and mortgage guarantees here in controversy, object of the case here referred to LSREF2 v. Miguel Rivera Rosario, et. als,, Civil No. FCC12010-0449. .

59. On July 14, 2020, approximately one year and nine months later, Hibiscus[4] filed in the foreclosure case referred in the preceding paragraph a "Motion Soliciting Substitution of Party",  announcing for the first time  that the same  had acquired all of LSREF2's interest in the credit facility at issue in this case, which plaintiff did not know, and that Hibiscus, in its own words,  "subrogated" itself  in all LSREF2's rights in relation to  the defendants.

60. However, in doing so, Hibicus also subrogated itself in relation to the claims plaintiff Miguel Rivera  had against LSREF2.

61. A third party that is subrogated to the creditor's rights  does not cause the extinction  of  the  original  compulsory  relationship,  but  replaces  one  creditor  with another. The  main effect of a subrogation  is that the new creditor is placed in the "same juridical situation"  as the creditor with respect to the debtor. (The Supreme Court's emphasis) (Cooperativa de Seguros Múltiples de Puerto Rico v. Jorge Carlo Marrer6, 2011 TSPR 99)

62. In this respect it should be considered  that when  on October 23, 2018 Hibiscus acquired all of LSREF2's interest in the credit facility at issue in this case, LSREF2's juridical situation already included against the same, and in favor of Mr. Gómez and plaintiff Miguel Rivera,  the Puerto Rico Superior Court's Resolution of February 6, 2017 entered in the foreclosure case and  referred in paragraph 41 of this complaint.

---

[4] Represented by the same law firm and attorney which represented LSREF2 in the foreclosure proceedings object of the present case and the referred appeals.

63. Said juridical situation also included the already existing and ongoing proceedings in the Puerto Rico Supreme Court, where the validity of said Resolution was being considered, and where finally Judgment was entered against LSREF2, and in favor of Mr. Gómez and plaintiff Miguel Rivera, risk that Hibiscus assumed.

64. In addition, it should be also be considered that in the transfer of credit, debtor conserves against the new creditor the pleas and defenses the same had against the prior creditor. (Cooperativa de Seguros Múltiples de Puerto Rico v. Jorge Carlo Marrero, supra)

65. As a result, Hibiscus is solidarily also responsible for LSREF2's malicious and without probable cause actions here depicted and for the damages suffered by plaintiff as a result of said actions, which are figured in the total sum of $5,500,000.00, and for any other claim included in the present complaint.

66. Plaintiffs' address is the following: Las Flores Street #358, San Juan, P.R.00912

WHEREFORE, plaintiff very respectfully requests from this Honorable Court the following:

a) That the same determine that both LSREF2 and Hibiscus are responsible, in a soliday manner, for the damages suffered by plaintiff in the present case as a result of LSREF2's malicious prosecution;

b) That the same grant this complaint and order defendants to pay plaintiff, solidarily, for the damages suffered, the amount of Five Million Five Hundred Thousand Dollars ($5,500,000.00), plus costs, expenses and attorney's fees.

b) That the same impose punitive damages against defendants  for an amount

not less than One Million Dollars ($1,000,000.00)

c) Grant  any other relief which this Honorable Court deems just and proper.

At San Juan, Puerto Rico this November 13, 2020.


S/RAUL BARRERA MORALES,
RAUL BARRERA MORALES, ESQ.
ATTORNEY FOR PLAINTIFF
Guerrero Noble #9,  Park Blvd. Urb.
San Juan, P.R. 00913
Tel. (787) 932-0469
barreralaw@yahoo.com
USDC 117-608